UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAN TIGRANYAN, (A 249-098-382),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-03756-DJC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. This is Petitioner's second habeas corpus petition.

## I. Factual and Procedural History

Petitioner arrived at the San Ysidro, California port of entry on October 30, 2024, where immigration officials detained him pursuant to 8 U.S.C. §1225(b)(1). ECF No. 8-1 at 5-7. After Petitioner expressed a credible fear of return to his native Armenia, he was placed in removal proceedings and applied for asylum. Id. at 2; ECF No. 1 at 5. He has remained detained at the California City Detention Facility (CCDF) throughout his removal proceedings.

### A. Removal Proceedings

Removal proceedings against Petitioner began on December 10, 2024, and were subject to several delays. ECF No. 8-1 at 9. Petitioner requested six continuances between December 2024

and July 15, 2025 to obtain counsel and prepare his asylum application. Id. at 2; ECF No. 1 at 5. Though Petitioner was prepared to proceed at a hearing scheduled for September 30, 2025, the Executive Office for Immigration Review (EOIR) postponed the hearing multiple times because it had triple-booked the Immigration Judge's (IJ) docket. ECF No. 1 at 5-6. Petitioner appeared for a first merits hearing before IJ Jerome Rothschild on January 20, 2026, at which Petitioner presented the majority of his testimony. Id. Despite Judge Rothschild's specific direction to have the case remain on his docket, EOIR scheduled the matter for March 25, 2026 before a different IJ, who referred the case back to IJ Rothschild. Id. at 6-7; see also ECF No. 15. On April 23, 2026, IJ Rothschild heard additional testimony, but abruptly ended the hearing early without explanation. Id. Between April 23 and June 1, 2026, EOIR did not schedule any additional hearings for Petitioner's unresolved matter. ECF No. 1 at 7. On June 1, 2026, EOIR set a hearing for June 23, 2026 before yet another IJ. ECF No. 10-1. The record does not indicate whether the June 23, 2026 hearing went forward. EOIR's online public case information portal indicates that Petitioner appeared for a final merits hearing on July 5, 2026, at which an IJ denied Petitioner's application for asylum and ordered him removed from the United States. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, last accessed Sept. 8, 2006. Petitioner submitted an appeal to the Board of Immigration Appeals (BIA) on July 27, 2026. Id. The appeal is currently pending, and a briefing schedule has not yet been set. Id.

**B. First Petition for Writ of Habeas Corpus**

In November 2025, after over one year of detention, Petitioner filed a petition for writ of habeas corpus in this Court, claiming that his prolonged detention violated the Due Process Clause of the Fifth Amendment. See Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR ("Tigranyan I"), ECF No. 1. The undersigned, applying the framework set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), found that Petitioner's prolonged detention without a bond hearing violated Petitioner's protected liberty interest against unjustified detention and recommended that Petitioner be released unless an IJ finds, by clear and convincing evidence, that Petitioner is a danger or flight risk. Tigranyan I, ECF No. 16. District Judge Calabretta adopted the undersigned's findings and recommendations in full and ordered that Respondents

provide Petitioner a bond hearing. Id. at ECF No. 18. Respondents provided Petitioner that hearing on January 23, 2026. ECF No. 14. The IJ found Petitioner to be a flight risk, denied bond, and ordered Petitioner to remain detained throughout the removal proceedings. Id.

**C. Second Petition for Writ of Habeas Corpus**

On May 16, 2026, Petitioner filed the instant habeas petition, claiming that his ongoing detention has become arbitrary and excessive and therefore violates the Due Process Clause and the Administrative Procedures Act. ECF No. 1. He also claims that the bond hearing did not comply with the Court's order because the IJ did not conduct an individualized assessment of flight risk and danger and did not apply the appropriate burden of proof. Id. Respondents countered that Petitioner's detention under §1225(b)(1) remains constitutional, that he received a constitutionally adequate bond hearing, and that he has not exhausted administrative remedies. ECF No. 8. Based on its relation to Tigranyan I, the district judge originally assigned to the instant matter reassigned it to District Judge Calabretta and the undersigned. ECF No. 11.

## II. Statutory Immigration Framework

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The parties do not dispute that 8 U.S.C. § 1225(b)(1) governs Petitioner's detention.

## III. Due Process Analysis

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995

F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). This Court previously found Petitioner's prolonged detention violated his right to procedural due process, and thus ordered a hearing to remedy the violation. Tigranyan I, ECF No. 16, 18. As explained below, despite Respondents' compliance with this Court's bond hearing order,[1] Petitioner's ongoing detention now raises substantive due process concerns, as it has become excessive in relation to its regulatory purpose.

As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention, or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001)); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it

---

[1] In the interest of judicial economy, because the undersigned is recommending release on substantive due process grounds, the Court need not fully address Petitioner's claims regarding the adequacy of the court-ordered hearing.

is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I"). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6). Zadvydas v. Davis, 533 U.S. 678 (2001). In Demore v. Kim, 538 U.S. 510 (2003) the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), but with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Id. at 513, 529 n.12, 530. Conversely, in Jennings v. Rodriguez, 538 U.S. 281 (2018), the Supreme Court found no implicit six-month limit on length of detention under § 1225(b). While these cases demonstrate that some brief period of detention is generally authorized by these immigration detention statutes, they do not preclude as-applied constitutional challenges to detention under those statutes, like the instant challenge.[2]

[2] In Demore, Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the

To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigrant detention to pre-trial criminal detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted over 22 months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). The pending appeal to the BIA suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while severely prolonged, the current 22-month duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that the government has substantially delayed the resolution of his case,

---

Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] ... could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

he does not pose a danger to the community, any flight risk he poses can be mitigated by alternatives to detention, and the conditions of his confinement are no less restrictive than that of criminal incarceration.

**B. Government Contribution to Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). Both parties bear some responsibility for the prolonged duration of Petitioner's detention. Petitioner's six requests for continuances between December 2024 and July 2025 delayed removal proceedings by approximately nine months. Respondents have been responsible for a comparable length of delay: approximately nine months of rescheduled hearings between September 2025 and July 2026. While the Petitioner-caused delays were a result of Petitioner exercising his right to an attorney and preparing his application for asylum within the constraints of detention, the government-caused delays were due to poor docket management, scheduling errors, and unexplained adjournments. Though both parties' actions prolonged proceedings, the government's actions caused avoidable delays that extended Petitioner's detention by nearly half its duration.

**C. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086. Nothing in the record suggests – and no IJ has found – that Petitioner poses a danger to the community. This factor will therefore turn on the evidence related to whether Petitioner poses a flight risk.

At the January 23, 2026 bond hearing, an IJ found Petitioner to be a risk of flight due to

his lack of family and employment ties to the U.S., the short duration of his time in the U.S. (during all of which he has been detained), and the speculative nature of his application for asylum. ECF No. 14. While the IJ's analysis did not identify anything specific to Petitioner's character or conduct that makes him a flight risk, the IJ's analysis generally aligns with the factors that may be considered in determining whether a noncitizen merits release on bond. See Matter of Guerra, 24 I.&N. Dec. 37 (BIA 2006). Petitioner's release could involve some risk of flight.

**D. Alternatives to Detention**

This factor looks to whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080. To the extent Petitioner poses a flight risk, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring. ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements. Id. The availability of these alternatives to detention greatly reduces the government's interest in detention for the purported purpose of mitigating flight risk.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Court in this and other districts have found that conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

Petitioner did not make specific allegations about conditions at CCDF but did note that he has suffered "significant and worsening deterioration of his health" while detained. ECF No. 1 at 4. As noted in Tigranyan I, an investigation by Disability Rights California found that CCDF "fails to provide access to critical medical and mental health care; fails to process and address disability-related requests in a timely manner; fails to meet people's basic needs, including adequate food, water, and clothing; employs staff who harass detainees, and utilizes solitary confinement unnecessarily." Tigranyan I at ECF No. 12. In a class action against ICE alleging that conditions of confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that the facility "struggle[s] to deliver standard of care for common uncomplicated problems," let alone for "patients with complex medical care needs" and that "it is not safe to be sick" at CCDF. Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). Patients at CCDF "are not seen within a reasonable time," and sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." Id. An expert investigation "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id.

Poor conditions at CCDF extend beyond inadequate healthcare. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitute[] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez Ruiz, 2026 WL 851980, at *5. Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Id. Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8. The undersigned agrees that conditions at CCDF "are both excessive in relation to any non-

punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose. Petitioner, who poses no danger to society, has spent nearly two years confined in conditions found to be more restrictive than criminal confinement, despite the availability of post-release monitoring that could mitigate any risk of flight Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the amended petition be granted on Count Two.

**IV. Remedy**

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected"); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus be GRANTED on Count 2 as follows:
   a. Respondent shall IMMEDIATELY RELEASE Petitioner Arman Tigranyan (A#

249-098-382) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions;

b. Upon Petitioner's release, Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose its standard flight-mitigation conditions;

2. The Clerk be directed to:

a. Serve the California City Immigration Processing Center with a copy of this Order; and

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 10, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE